IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
JUN 2 1 2005

| | |
|---|---|
| Patrick M. Geraets, individually, Patrick M. Geraets, personal representative of the Estate of Joanne Geraets, Patrick M. Geraets, as the natural guardian/conservator of Justin Geraets, a minor, and Sheila Geraets<br><br>Plaintiffs<br><br>vs.<br><br>Center Mutual Insurance Company<br><br>Defendant. | CIV 05-4086<br><br>COMPLAINT |

For their Complaint, Plaintiffs state the following:

### Jurisdictional Statement

1. Federal Jurisdiction is based upon 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Plaintiffs are residents of South Dakota and for the purpose of federal diversity jurisdiction are citizens of South Dakota.

3. Center Mutual Insurance Company, ("**Center Mutual**"), is a North Dakota corporation with authority to conduct business in South Dakota. For the purpose of federal diversity jurisdiction, Center Mutual is a citizen of North Dakota.

### Factual Background

4. On June 22, 1999, Patrick M. Geraets, ("**Pat Geraets**") and Joanne Geraets ("**Joanne**") were husband and wife, with twelve children born to their marriage.

1

5. On June 22, 1999, Sheila Geraets ("**Sheila**") and Justin Geraets ("**Justin**") were minor children of Pat Geraets and Joanne.

6. Under a policy of insurance and its endorsements, Policy PAA 023357, Center Mutual insured Pat Geraets, among others, from November 28, 1998, through November 28, 1999, under a Personal Auto Policy, (the "**Policy.**").

7. On June 22, 1999, at about 8:30 p.m., Pat Geraets was driving a 1989 Buick LaSabre, VIN 1G4HP54C8KH457865 ("**Buick**"), in an eastbound direction on Highway 14 in Weld County, Colorado. At that time, Joanne and Sheila were back seat passenger and Justin was seated in the front passenger seat.

8. On June 22, 1999, the Buick was an "insured vehicle" under the Policy.

9. Further at that time, Terry Gardner was driving a 1991 Peterbuilt tractor/trailer on Highway. Gardner, traveling south on Weld County Road 77, had stopped at the stop sign designed to yield the right of way to vehicles traveling on Highway 14.

10. However, Gardner then pulled his tractor/trailer out in front of the Buick, which crashed in to the tractor/trailer.

11. Terry Gardner's negligence, inclusive of his failure to yield the right of way to Geraets' Buick, was the direct and proximate cause of the collision.

12. As the direct and proximate result of the collision, Pat Geraets, Sheila and Justin suffered personal bodily injuries.

13. As the direct and proximate result of the collision, Joanne suffered personal injuries so severe that she died later that day.

14. On June 22, 1999, Terry Gardner was an insured and the tractor/trailer he was driving was an insured vehicle under a policy of liability insurance with Great West Casualty Company, ("**Gardner Policy**").

15. The Gardner Policy had a single limit of liability in the amount of $750,000.00.

16. Prior to May 9, 2000, Pat Geraets in his individual, personal representative and natural guardian capacities, entered into a tentative settlement with Great West Casualty Company for the payment of the liability limits of the Gardner Policy in exchange for a release of all claims against Great West's insureds, including Terry Gardner, from any and all claims the Geraets family had arising out of the collision on June 22, 1999, inclusive of bodily injury claims, wrongful death claims for the statutory beneficiaries and Joanne's estate's claim for her pre-death or survival claim.

17. Consistent with the tentative agreement with Great West, Pat Geraets provided Center Mutual with written notice on May 9, 2000, that he intended to proceed to memorialize the settlement with Great West and the release of its insureds after thirty day unless Center Mutual desired to substitute its draft for $750,000.00 to protect its subrogation claim.

18. In the letter dated May 9, 2000, Pat Geraets informed Center Mutual that the letter and notice of the tentative settlement were being submitted pursuant to the procedure commonly known as the Schmidt/Clothier Notice.

19. Though Center Mutual and the Plaintiffs were not able to agree on the nature and extent of the underinsurance benefits under the Policy, or the claims for which such benefits might be payable, Center Mutual agreed, through letters dated June 22,

3

2000, and June 29, 2000, that: (1) Center Mutual was not going to substitute its draft for the liability limits of Great West under the Gardner Policy and (2) Plaintiffs' claims for underinsurance benefits under the Policy would not be denied based on the settlement and release of Great West and its insureds, including Terry Gardner.

20. On or about August 10, 2000, Pat Geraets, in his individual, personal representative and conservator capacities settled the claims against Great West and its insureds in exchange for the single limits of liability insurance under the Gardner Policy.

21. Endorsement PP 03 11 12 89 created Center Mutual's Insuring Agreement for the Underinsured Motorists Coverage in effect on June 22, 1999.

22. The Insuring Agreement stated, in pertinent part:

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury."

1. Sustained by an "insured" and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle."
We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

B. "Insured" as used in this endorsement means:
1. You or any "family member."
2. Any other person "occupying" "your covered auto."
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

23. The Policy, pursuant to endorsement PP 01 65 09 95, defined an "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount

paid for 'bodily injury' under that bond or policy to an 'insured' is not enough to pay the full amount the 'insured' is legally entitled to recover as damages."

24. Endorsement PP 04 02 04 86 replaced the Limits of Liability under the Policy, to be defined on June 22, 1999, as follows:

> The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
>
> This is the most we will pay regardless of the number of:
>
> 1. "Insureds"
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the accident.

25. The Policy's Limits of Liability, as shown on the Policy Declarations page at the time of the collision, for Underinsured Motorist Coverage was $500,000.00 for "each person" and $1,000,000.00 for "each accident."

26. As a result of the collision and Joanne's death, Pat Geraets, Justin, Sheila, the estate of Joanne Geraets, and several of Joanne's thirteen statutory wrongful death beneficiaries were "insureds" for the purposes of underinsurance benefits under the Policy.

27. The compensation for damages due to the insureds arising from the collision and Joanne's death exceeded $750,000.00. As a result, on June 22, 1999, the tractor/trailer that Terry Gardner was driving was an "underinsured motor vehicle" as defined by the Policy's endorsement PP 01 65 09 95.

5

28. As part of his efforts as conservator for Sheila and Justin, Pat Geraets signed an Affidavit on March 31, 2000, in Moody County Case No. 99-20. in paragraph 7 of this Affidavit, Pat Geraets stated that the benefits available under the Policy would be available to him as the surviving spouse. This statement was an error on his lawyer's part as to number of insureds entitled to benefits under the Policy.

## Count One - Declaratory Judgment

29. Plaintiffs re-allege paragraphs 1 through 28.

30. This Complaint and the relief sought by Plaintiffs are the proper subject for a declaratory ruling by this Court pursuant to 28 USC §§ 2201 and 2202 and Fed. R. Civ. P. 57.

31. Plaintiffs and Center Mutual disagree on the nature and extent of the underinsurance benefits available to Plaintiffs under the Policy, specifically though without limitation the number of insureds entitled to benefits, the application of the Limits of Liability to the insureds' available benefits, and the application of the "difference of the limits" principle to the insureds' available benefits.

32. Since a controversy exists among the parties as to the nature and extent of the insurance coverage provided to the Plaintiffs under the Policy, this Court should determine those controversies and issue a declaratory ruling accordingly.

WHEREFORE, Plaintiffs pray for judgment at the conclusion hereof.

## Count Two – Contractual Benefits for the Bodily Injuries of Pat Geraets, Sheila, and Justin

33. Plaintiffs re-allege paragraphs 1 through 32 of the Complaint.

34. As a direct and proximate result of the collision on June 22, 1999, Pat Geraets, Sheila and Justin suffered personal injuries, including, without limitation, bodily injuries, pain, suffering, mental anguish, and loss of enjoyment of life.

35. As of June 22, 1999, Sheila and Justin were under the age of 18. Justin remains a minor at this time, but Sheila has reached the age of 18.

36. As a direct and proximate result of the collision, Pat Geraets suffered special damages, namely medical expenses for services provided for himself and for his minor children, Justin and Sheila, in an amount of which will be proven at trial.

37. Terry Gardner's negligence proximately caused these damages, such negligence consisting of, among other things: (a) failure to keep a proper lookout; (b) failure to yield the right of way; and (c) failure to keep his vehicle under control.

38. The compensation these Plaintiffs received from the Gardner Policy was not enough to pay the full amount of damages they were legally entitled to recover.

39. These Plaintiffs are entitled to further contractual benefits available under the Policy, which Center Mutual has failed to provide.

WHEREFORE, Plaintiffs pray for relief at the conclusion hereof.

### Count Three – Contractual Benefits for the Bystander Claims Negligent Infliction of Emotional Distress) of Pat Geraets, Sheila, and Justin

40. Plaintiffs re-allege paragraphs 1 through 32.

41. These Plaintiffs had a close relationship with Joanne on and before June 22, 1999.

42. These Plaintiffs, as occupants of the Buick, were in the zone of Terry Gardner's negligence at the time of the collision on June 22, 1999.

43. These Plaintiffs contemporaneously observed the serious injury to Joanne that lead to her death a short time later.

44. As a direct and proximate result of the collision and Terry Gardner's negligence, these Plaintiffs suffered emotional distress arising from the contemporaneously observation of the injuries to Joanne that led to her death, which distress has been accompanied by the physical manifestations of difficulty sleeping, stress, and anxiety.

45. The compensation these Plaintiffs received from the Gardner Policy was not enough to pay the full amount of damages they were legally entitled to recover.

46. These Plaintiffs are entitled to further contractual benefits available under the Policy, which Center Mutual has failed to pay.

## Count Four – Contractual Benefits for the wrongful death statutory beneficiaries of Joanne's wrongful death

47. Plaintiffs re-allege paragraphs 1 through 32.

48. Pat Geraets and the twelve children he and Joanne had together were the surviving persons entitled to recover under the wrongful death act of the state of South Dakota.

49. As a direct and proximate result of Terry Gardner's negligence, as described above, the Plaintiffs and the act's beneficiaries, suffered great losses, including grief, loss of earnings or financial contribution to the family's farm operations, loss of prospective inheritance, loss of earning capacity, loss of society and companionship, loss of life's pleasures, loss of services and support, mental anguish, loss of advice, guidance, tutelage, and counsel, and the pecuniary value of the loss of such services and support, funeral and interment expenses, estate expenses, additional costs of household maintenance, and all other damages allowed by applicable law.

50. The compensation these Plaintiffs and/or the insureds received from the Gardner Policy was not enough to pay the full amount of damages they were legally entitled to recover.

51. These Plaintiffs and/or insureds are entitled to further contractual benefits available under the Policy, which Center Mutual has failed to pay.

### Count Four – Contractual Benefits for the Estate of Joanne for Joanne's pre-death claims

52. Plaintiffs re-allege paragraphs 1 through 32 of the Complaint.

53. As a direct and proximate result of the collision on June 22, 1999, Joanne suffered personal injuries, including, without limitation, bodily injuries, pain, suffering, and severe mental anguish, all suffered prior to her death.

54. As a direct and proximate result of the collision, Joanne and/or Pat Geraets suffered special damages, namely medical expenses for services provided for Joanne prior to her death, in an amount of which will be proven at trial.

55. Terry Gardner's negligence proximately caused these damages, such negligence consisting of, among other things: (a) failure to keep a proper lookout; (b) failure to yield the right of way; and (c) failure to keep his vehicle under control.

56. The compensation this Plaintiff received from the Gardner Policy was not enough to pay the full amount of damages to which this Plaintiff was legally entitled to recover.

57. This Plaintiff is entitled to further contractual benefits available under the Policy, which Center Mutual had failed to pay.

WHEREFORE, Plaintiffs pray for judgment as follows:

A: On Count One:

1.  For a determination as to the number of insureds entitled to benefits under the policy and the amount of maximum benefits available to such insureds under the Policy;

2.  For Plaintiffs costs or disbursements incurred herein;

3.  For Plaintiffs' attorney fees as allowed by law; and

4.  All other relief, which the court deems equitable under the circumstances.

B: On Counts Two, Three, Four and Five:

1.  For a money judgment for Plaintiffs' compensatory and special damages in an amount proven at trial;

2.  For Plaintiffs costs or disbursements incurred herein;

3.  For Plaintiffs' attorney fees as allowed by law; and

4.  All other relief, which the court deems equitable under the circumstances.

Dated this 21st day of June 2005.

BANGS MCCULLEN, BUTLER, FOYE & SIMMONS, L.L.P.

BY _____ Patrick J. Knecht for John P. Mullen
John P. Mullen
PO Box 949
Sioux Falls, SD 57101-0949
605/339-6800
605/339-6801 (fax)
Attorneys for Plaintiffs


**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

BANGS MCCULLEN, BUTLER, FOYE & SIMMONS, L.L.P.

BY _____ Patrick J. Knecht for John P. Mullen
John P. Mullen
PO Box 949
Sioux Falls, SD 57101-0949
605/339-6800
605/339-6801 (fax)
Attorneys for Plaintiffs